Minute Order Form (96/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 1141 | **DATE** | 5/13/2002 |
| **CASE TITLE** | Lukasz Jezuit vs. Brian R. Perryman | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We grant the respondents' motion to dismiss Jezuit's petition pursuant to FRCP 12(b)(6). This case is hereby terminated. This is a final and appealable order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 14 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | 13 |
| | Copy to judge/magistrate judge. | | |
| TSA | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lukasz Jezuit, | ) |
|              Petitioner, | ) ) ) |
| v. | ) No. 01 C 1141 ) |
| Brian R. Perryman, as District Director of the Immigration and Naturalization Service, and the United States of America, | ) Wayne R. Andersen ) District Judge ) ) ) |
|              Respondents. | ) ) |

DOCKETED
MAY 14 2002

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of Brian R. Perryman, as District Director of the Immigration and Naturalization Service ("INS"), and the United States of America (collectively, the "respondents") to dismiss petitioner Lukasz Jezuit's ("Jezuit") amended petition for declaratory judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, we grant the motion to dismiss.

### BACKGROUND

On October 19, 1991, at age 14, Jezuit, a native of Poland, was admitted to the United States as a lawful permanent resident. Also in 1991, Jezuit's father was naturalized as an United States citizen.

Beginning in 1995, Jezuit was convicted in the Circuit Court of Cook County of four separate crimes. On February 21, 1995, Jezuit was convicted of criminal trespass to vehicles and burglary. On August 15, 1996, he was again convicted of burglary. Finally, on April 15, 1999, he was convicted of retail theft. Additionally, Jezuit was identified in the Illinois State Police

Criminal History Record Information database as a heroin addict on January 28, 1998 and November 21, 1998.

On November 15, 1999, the INS initiated removal proceedings against Jezuit, alleging that he was deportable: (a) as an aggravated felon for his theft conviction pursuant to 8 U.S.C. §1101(a)(43)(G) of the Immigration and Nationality Act ("INA"); (b) for his convictions for crimes involving moral turpitude pursuant to 8 U.S.C. §1227(a)(2)(A)(i)(I) and (II); and (c) as a drug abuser or addict pursuant to 8 U.S.C. § 1227(a)(2)(B)(ii). (*See* Notice to Appear.) On May 31, 2000, an immigration judge found Jezuit removable as charged.

In reaching this decision, the immigration judge noted that section 240A(d)(1) of the Immigration and Nationality Act provides that a period of continuous residence or physical presence in the United States shall end when an alien is served with a Notice to Appear or when an alien commits an offense that renders him inadmissible to or removable from the United States, whichever is earliest. Because of his criminal convictions, the immigration judge determined that Jezuit could not establish that he had resided in the United States continuously for seven years after being admitted. (Oral Decision of the Immigration Judge, at 2.) Thus, the immigration judge ruled that Jezuit was not eligible to apply for relief from deportation and ordered him removed. (*Id.* at 3.)

Jezuit appealed the immigration judge's adverse decision to the Board of Immigration Appeals (the "Appeals Board"). On December 7, 2000, the Appeals Board affirmed the decision, dismissing the appeal without opinion. Jezuit did not seek further review. Based on the Appeals Board's final order of removal, Jezuit was removed from the United States on February 13, 2001. On February 20, 2001, Jezuit filed a habeas corpus petition with this Court and, on March 8,

2001, he filed an amended petition.

## DISCUSSION

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. American Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). A court will grant a 12(b)(6) motion only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

The respondents contend that, because Jezuit was removed pursuant to a final order of deportation and is no longer in the custody of the INS, the case is moot and this Court does not have jurisdiction to consider Jezuit's petition. If Jezuit is indeed a deported alien, this Court does not have jurisdiction to consider his challenge to the validity of the Appeals Board's final order to remove him. The central question, however, is whether Jezuit was an alien at the time he was deported, which is a legal question this Court has jurisdiction to review. *See generally, INS v. St. Cyr*, 533 U.S. 289, 311-312, 121 S.Ct. 2271 (2001).

Jezuit argues that, under the Child Citizenship Act of 2000, 8 U.S.C. § 1431, as amended by Pub.L. No. 106-395, 114 Stat. 1631 ("CCA"), he is a citizen of the United States and, thus, his deportation to Poland on February 13, 2001 deprived him of his constitutional rights under the Fifth and Fourteenth Amendments. Specifically, Jezuit claims that he satisfies the requirements

3

of section 322(a) of the CCA, which states in pertinent part:

> A parent who is a citizen of the United States may apply for naturalization on behalf of a child born outside the United States . . . . The Attorney General shall issue a certificate of citizenship to such parent upon proof to the satisfaction of the Attorney General, that the following have been fulfilled:
>
> (1) At least one parent is a citizen of the United States, whether by birth or naturalization.
>
> (2) The United States citizen parent—
>
>     (A) has been physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years; or
>     (B) has a citizen parent who has been physically present in the United States or its outlying possessions for a period of years totaling not less than five years, at least two of which were after attaining the age of fourteen years.
>
> (1) The child is under the age of eighteen years.
>
> (2) The child is residing outside of the United States in the legal and physical custody of the citizen parent, is temporarily present in the United States pursuant to a lawful admission, and is maintaining such lawful status.

8 U.S.C. § 1433(a).

In his petition, Jezuit argues that on February 27, 2001, the date the CCA took effect, the law granted him automatic citizenship because in 1991, when his father was naturalized as an American citizen, he was under eighteen years of age. Jezuit concedes that, because the CCA did not exist in 1991, it could not have granted him automatic citizenship at that time. He claims, however, that in 1991 he satisfied the conditions necessary to come within the purview of the CCA in 2001. The pertinent inquiry for this Court then is whether Congress intended the CCA to apply to individuals who were able to meet the statutory requirements on or after the law's

4

effective date, February 27, 2001, or to individuals who satisfied the Act's requirements at the time their parents became United States citizens, even if their naturalization preceded the CCA's enactment. We agree with the respondents that section 322 of the CCA applies only to individuals who satisfy the statutory conditions for citizenship, including being under eighteen years of age, on or after February 27, 2001. Although the words "on or after" do not appear in the CCA, the express statutory language supports our conclusion.

Nevertheless, Jezuit asserts that section 322(a) of the CCA supports his claim that Congress intended for individuals who satisfied the Act's requirements prior to the time it became effective to be entitled to its benefits. Specifically, Jezuit emphasizes that section 322(a) states literally that citizenship may be automatically conferred upon an alien on the statute's effective date if all of its conditions "have been fulfilled." (*See* Petitioner's Response to Government' Motion to Dismiss, at 3-4.) Jezuit argues that, absent any statutory language to the contrary, the words "have been" suggest that an individual could have fulfilled the CCA's conditions at some point in the past. *Id.* at 4. We disagree.

The statute's temporal reach is made explicitly clear in the section entitled "EFFECTIVE DATE," which states that "[t]he amendments made by [the CCA] shall take effect 120 days after the date of the enactment of this Act and *shall apply to individuals who satisfy the requirements of section 320 or 322* of the Immigration and Nationality Act, as *in effect on such effective date.*" 8 U.S.C. § 1431 (emphasis added). The CCA's effective date is February 27, 2001. Furthermore, the statute is written in the present tense. It requires that a child "[be] under eighteen years of age" when the statute takes effect. *See id.* and 8 U.S.C. § 1433(a)(3).

Our interpretation of the temporal reach of the CCA's automatic citizenship provisions is

5

in accord with that of the BIA and other courts. In *In re Rodriguez-Tejedor*, 23 I&N Dec. 153 (BIA 2001), the BIA concluded that "the automatic citizenship provisions of section 320 of the Immigration and Nationality Act . . . are not retroactive, and, consequently, do not apply to an individual who resided in the United States with his United States citizen parents as a lawful permanent resident while under the age of 18 years, but who was over the age of 18 years on the CCA effective date." Similarly, the Fifth Circuit Court of Appeals has concluded that "[the provision of the CCA entitled 'effective date'] contains an explicit command that the amended automatic naturalization provisions only be applied to alien children who satisfy the statute's conditions on or after February 27, 2001, the relevant effective date." *Nehme v. INS*, 252 F.3d 415, 431 (5th Cir. 2001).

As Jezuit correctly points out, the Seventh Circuit has not yet ruled on the temporal reach of the CCA and we are not bound by either the BIA or Fifth Circuit opinions. However, this Court did recently rule that the "[CCA] only confers automatic citizenship upon those who meet its requirements on or after its effective date of February 27, 2001." *Baresic v. Ashcroft*, 2002 WL 84621, at *2 (N.D. Ill. Jan. 18, 2002) (Kocoras, J.). Therefore, we find that individuals seeking the benefits of the CCA's automatic citizenship provision must satisfy the Act's statutory conditions on or after February 27, 2001. Because Jezuit was 24 years old on February 27, 2001, he is not a United States citizen pursuant to the CCA.

Accordingly, we conclude that Jezuit has failed to allege facts which support his argument that he was a United States citizen at the time he was deported on February 13, 2001, and that he has not stated a claim upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, we grant the respondents' motion to dismiss Jezuit's petition pursuant to Federal Rule of Civil Procedure 12(b)(6). This case is hereby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: May 13, 2002

7